**UNITED STATES of America, Plaintiff,**

v.

**Steven Joseph KMETZ, Jr., Defendant.**

**No. 71–CR–33.**

United States District Court, W. D. Wisconsin.

July 30, 1971.

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff.

Marc Dorfman, Madison, Wis., for defendant.

## OPINION AND ORDER

ROSENSTEIN, Senior Judge, U. S. Customs Court.[1]

Defendant has been indicted and tried for willfully and knowingly refusing to report for induction into the armed services of the United States in violation of 50 U.S.C. App. § 462. The case was tried to this court without a jury on July 16, 1971.

Before trial, defendant moved to dismiss the indictment and the court reserved a ruling on this motion. At the conclusion of the Government's case, defendant moved for a judgment of acquittal and a ruling was reserved on that motion. Both motions have now been fully briefed by the parties.

## MOTION TO DISMISS

Defendant has moved to dismiss the indictment on the ground that it does not charge a crime against the United States because Congress has failed to renew certain provisions of the Universal Military Training and Service Act of 1967. Section 17(c) of the Act, 50 U.S. C. App. § 467(c) provides:

"Notwithstanding any other provisions of this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix], no person shall be inducted for training and service in the Armed Forces after July 1, 1971, except persons now or hereafter deferred under section 6 of this title [section 456 of this Appendix] after the basis for such deferment ceases to exist."

When Congress failed to extend the draft, the effect of the above quoted provision was not to abolish the Selective Service System, nor even to stop all inductions. It provides only that, unless and until Congress acts, the Selective Service System, after July 1, 1971, cannot induct registrants who have not previously been deferred under the Act.

■ Defendant is charged with refusing to report for induction on March 11, 1968. There is no dispute over the fact that on that date, the Selective Service System had authority to induct him. I can find no support for the proposition that Congress, by its inaction in 1971, intended to provide amnesty to those persons who have refused induction at an earlier time, but whose prosecutions come to trial at a time

---

1. Sitting as District Judge for the Western District of Wisconsin by designation of the Chief Justice of the United States.

when the Selective Service System is unauthorized to induct them.

The motion to dismiss the indictment is denied.

## MOTION FOR A JUDGMENT OF ACQUITTAL

Relying principally on United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970), defendant has moved for a judgment of acquittal on the grounds that neither the local board nor the appeal board gave reasons for denial of defendant's application for classification as a conscientious objector, and that this court "cannot otherwise determine with any degree of assurance that the decision really made by the board properly supported the rejection and had a basis in fact * * *," Lemmens, *supra* at 624.

At trial, the government introduced the defendant's selective service file into evidence. Defendant's motion for a judgment of acquittal can be decided on the basis of the documents contained in that file.

Defendant's selective service file reveals the following material facts: On September 8, 1966, the defendant informed his local board that he was a conscientious objector. The board issued the defendant a conscientious objector application form (SSS Form 150) on September 8, 1966; defendant completed the form and returned it to the board on September 12, 1966. On September 20, 1966, the local board reopened the defendant's classification and reclassified him again as I–A by a vote of five to nothing. The local board gave no reasons for this action.

On September 29, 1966, defendant appealed his classification. The State Appeal Board tentatively classified him I–A (eligible for unrestricted military service) and referred his file to the Department of Justice for an advisory recommendation in accordance with the applicable procedures. On November 16, 1967, the Appeal Board received from the Department of Justice an advice letter and a resume of its investigation. These two documents constitute the only evidence in defendant's file bearing on his C–O claim, with the exception of defendant's application Form 150. In the advice letter the Department recommended that the defendant be denied I–O status, and on January 10, 1968, the Appeal Board unanimously voted to retain defendant in class I–A. No reasons were given for the Appeal Board's decision.

Because the local board reopened defendant's classification on the basis of his application Form 150, I must conclude that they found that the representations made by defendant in that application would, if true, entitle him to I–O classification. 32 F.R. § 1625.2. See also United States v. Mulloy, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). Aside from defendant's Form 150, the only other evidence relative to his C–O claim considered by the Selective Service System was the Justice Department's advice letter and resume.

After detailing the history of defendant's dealings with his local board, the Justice Department's advice letter continues:

"It was not until September 8, 1966, that the registrant signed a statement at the office of the clerk of the local board stating 'I refuse to report for induction on September 12, 1966 on the ground that I am a conscientious objector.' He did not claim conscientious objection until military service had become imminent for him. Campbell v. United States [4 Cir.], 221 F.2d 454. Salamy v. United States [10 Cir.] 379 F.2d 838. Religious convictions of the nature of conscientious objection arise from deep and abiding beliefs held for a long period of time and their assertion after the registrant has been found to be fully acceptable for mili-

tary service and after he has been ordered to report for induction and has indicated that he would report for induction, is not persuasive. United States v. Taylor [6 Cir.], 351 F.2d 228."

If this is read to mean that the Appeal Board could take the registrant's late assertion of his claim into account in judging his sincerity, I would have no argument with that proposition. But particularly because the above quoted paragraph is sprinkled with legal citations, a laymen Board of Appeals might very likely conclude that the Justice Department was informing them that the application was insufficient as a matter of law. In such circumstances:

"[t]he Department of Justice advice letter was at least susceptible to the reading that petitioner's proof of sincerity was insufficient as a matter of law because his conscientious objector claim had not been timely asserted. This would have been erroneous advice had the Department's letter been so read. Since the Appeals Board might have acted on such an interpretation of the letter, reversal is required under Sicurella v. United States, 348 U.S. 385 [75 S.Ct. 403, 99 L.Ed. 436] (1955)." Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) (Harlan, J., concurring).

Elsewhere in the letter, the Department of Justice advised the Appeal Board:

"In answer to question 3, Series II of his Special Form for Conscientious Objection as to how, when, and from whom or what source he received the training and acquired the belief which is the basis of his conscientious-objector claim the registrant answered 'the church and it's commandments.' The resume shows, page 2, that an official of the registrant's high school advised that the Catholic Church has no principle that would support the registrant's evasion of military service and that the church does not encourage evasion of military service; that the registrant has been arrested on more than one occasion for game law violations and does not believe that the law is made for him."

This paragraph is susceptible to the reading that the determination of an individual's conscientious objector claim must be based upon the religious teachings of the church of which he is a member, rather than on his own individual beliefs as he understands them. If so, this is erroneous advice. "The duty imposed on the boards is to determine subjectively and objectively the sincerity of the individual's belief, not the nature of the teachings of any religious faith." United States v. Simmons, 213 F.2d 901, 904 (7th Cir. 1954). See also, Keefer v. United States, 313 F.2d 773, 776 (9th Cir. 1963). No specific doctrinal support is required. United States v. Washington, 392 F.2d 37 (6th Cir. 1968).

◼ Neither the Local Board nor the Appeal Board stated their reasons for rejecting defendant's claim. I cannot say with any degree of assurance that the Appeal Board did not deny the claim on either of the two erroneous grounds suggested by the Department's advice letter. I conclude that defendant's motion for a judgment of acquittal must be granted, under these circumstances. Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436; United States v. Lemmens, 430 F.2d 619, 623–624 (7th Cir. 1970).